**SO ORDERED.**

**SIGNED this 29 day of August, 2005.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| IN RE: | BANKR. CASE NO. |
|---|---|
| THE PALMS AT WATER'S EDGE, L.P. | 04-51709-C |
| *DEBTOR* | CHAPTER 11 |

**MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO CLAIM OF THOMAS A. LAMB**

**Background**

The debtor, The Palms at Waters Edge, L.P., filed an objection to the claim of Thomas A. Lamb, an architect. Doc. #68 (Objection to Claim of Thomas A. Lamb); Doc. #203 (Amended Objection to Claim of Thomas A. Lamb). Lamb claims that he is owed $266,875.00 for architectural work done for the debtor commissioned by the debtor's agent, Wylie Eaton. The debtor objects to Lamb's claim for

three reasons. The debtor first claims there was no contract because no meeting of the minds existed as to who would pay Lamb and as to how much Lamb would be paid for the work. *See* Doc. #203. The debtor also claims that Lamb's claim is barred by the Statute of Frauds. *Id*. Finally, the debtor argues that Lamb is not entitled to an alternative claim of quantum meruit because the architectural designs provided no financial benefit to the debtor. *Id*.

Neither party contests that Texas law controls. Both parties are Texas residents, the property in question is located in Texas and the parties cite Texas cases in their pleadings. The court finds that Texas law controls.

**Was there an oral contract between the parties?**

The parties agree and the evidence supports a finding that there was no written contract between the parties. Lamb contends that there was an oral contract between the debtor and himself. *See* Doc. #218 (Claimant's Brief and Suggested Findings). The debtor responds that there was no meeting of the minds on what Lamb would be paid for his work or who would pay him.

Under Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, a party correctly filing a proof of claim is deemed to have established a prima facie case. *In re Fidelity Holding Company, Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). The claimant will prevail unless the objecting party produces evidence sufficient to rebut the prima facie validity of the claim. *Id*. Once the claim is thus rebutted, then whichever party would have the burden of proof respecting the claim outside the bankruptcy bears that same burden in bankruptcy. *See Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 19 (2000); *In re Promedco of Los Cruces*, 275 B.R. 499, 503 (Bankr. N.D. Tex. 2002). With respect to the contesting of a claim

for a oral contract, the burden of proof will fall on the party claiming the existence of an oral contract and its breach, in this case, Lamb.

An essential element of any valid contract is a meeting of the minds. When there is no written contract in evidence, and one party attests to a contractual agreement while the other vigorously denies any meeting of the minds, determining the existence of a contract is a question of fact under Texas law. *Runnels v. Firestone*, 746 S.W.2d 845, 849 (Tex. App.–Houston [14th Dist.] 1988, writ denied), *citing Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607, 610 (Tex. 1972); *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App. – San Antonio 1997, no writ). Because every contract requires a meeting of the minds, the "meeting" necessarily is a question of fact. *Id*. A meeting of the minds can be inferred from the parties' conduct and their course of dealing. *Id.* at 350. In *Buxani*, the San Antonio Court of Appeals held that the appellants had agreed to the terms of an oral contract based on their conduct, including the fact that they allowed work to begin and to continue without objection until the appellees billed them for the work. *Id.* at 352.

Here, the evidence shows that there was a meeting of the minds between Lamb and the debtor. Although Eaton denies the existence of an oral contract, conduct by both parties indicates otherwise. Eaton on behalf of the debtor sought out Lamb to produce architectural drawings for a condominium project to be built on Mustang Island. During meetings with Lamb, Eaton discussed what Lamb had to do and what Eaton wanted produced. Lamb set out to produce the architectural work within the constraints of those discussions. Eaton knew that Lamb was working on drawings for The Palms and never objected or complained about the architectural work being done for him. In *Buxani,* the court found that the parties

had agreed to the terms of an oral contract, based on evidence that the parties allowed the work to begin and to continue without objection until the appellees billed them for the work. The facts in our case go even further than those in *Buxani* as Eaton used the work by Lamb to try to entice developers into financially backing the debtor to develop the land or to buy the land altogether.

With the exception of the price terms, the two parties agreed that Lamb would produce architectural work to be used to entice developers and build the project on Mustang Island. The absence of an express price term is not fatal to finding a meeting of the minds. Courts may supply a reasonable price term if all other elements of the contract are shown.[1] *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 895 (Tex. App.–Dallas 2003, no pet.) ("Where the parties have done everything else necessary to make a binding agreement for the sale of goods or services, their failure to specify the price does not leave the contract so incomplete that it cannot be enforced. In such a case it will be presumed that a reasonable price was intended."). The lack of a specific price term thus does not of itself establish no meeting of the minds.

The debtor also contends that there was no meeting of the minds because the parties never agreed on who would pay for the work. Eaton testified to as much. The debtor also produced two contracts which it claims show that Lamb expected entities other than the debtor to pay for the architectural drawings.

A meeting of the minds can arise from the parties' acts and conduct from which one party can

---

[1] The court has found that there was a contract for services. The only elements of existence of the contract that the debtor disputes is the meeting of the minds on price and who was to pay Lamb. The court addresses the reasonable price term later in this decision.

-4-

reasonably draw the inference of a promise. *Buxani,* 940 S.W.2d at 352, *citing Haws & Garrett,* 480 S.W.2d at 609-10. Lamb showed that Eaton on behalf of the debtor asked Lamb to work on architectural drawings. Eaton never denied that he had done so, never told Lamb to stop working and never complained about the work being done. In fact, Eaton used the work to entice developers. Based on this conduct, Lamb could reasonably draw the fair inference of a promise by the debtor to pay for his work. *Buxani*, 940 S.W.2d at 352. So does the court.

The debtor's rebuttal evidence consisted of two contracts said to have been sent by Lamb to other entities in hopes of getting paid, one to Soledad Development, Inc. (and its president, Tom Harden) and one to Curtis Development LLC (and its agent, Gary Goff.)[2] Essentially, the debtor argues that Lamb was seeking payment for the work done for the Palms from separate entities like Soledad and Curtis Development. The debtor believes these contracts show that there was never a meeting of the minds on who would pay Lamb for his work. As for the Soledad contract, no one provided any context with regard to how the draft came into being. The court does not know who Tom Harden is or who Soledad is. The only facts that the court can deduce are that there was a relationship between Lamb and Soledad, the contract was sent out of Lamb's office, and the contract was never signed. The court knows too little about the significance of the document to give it the weight that the debtor wants to give it. As for the Curtis Development, LLC contract, testimony taken at the hearing and correspondence between Lamb and Gary Goff indicates that Goff was intending to buy the land from debtor, subject to financing. Most of the discussions with Gary Goff took place in 2003, four years after the initial meeting between Lamb and

---

[2] The debtor claims that there are other contracts Lamb sent to other entities. However, none of these contracts were produced at the hearing.

Eaton. By this time, Lamb was trying desperately to get someone to pay for the work he had produced, the debtor having consistently refused to pay for it. Lamb sent contracts to Goff hoping to be employed for architectural services using the architectural renderings he had already created. Lamb, understandably frustrated with Eaton, tried to get paid elsewhere four years after he started the work. However, this after-the-fact frustration and negotiation with Goff did not somehow cancel, supercede or waive the debtor's continuing obligation to pay Lamb for his work. Lamb even explained during the hearing that these contracts sent out to other entities were just his way of trying to make the best of a bad situation. The debtor was ultimately still on the hook to pay. Weighing the evidence, the court finds that Lamb has satisfied his burden that there was a meeting of the minds. Thus, there was a contract between Lamb and the debtor.

## Did the Statute of Frauds apply?

The debtor contends that even if there is a contract, it cannot be enforced because it is an oral contract "not to be performed within one year." Thus, says the debtor, the contract violates the statute of frauds.[3]

Texas law provides:

(a) A promise or agreement described in subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
    (1) in writing; and
    (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
(b) Subsection (a) of this section applies to: ...

---

[3] The statute of frauds is an affirmative defense. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1027 (5th Cir. 1982). As such the debtor who asserted the defense has the burden of proof to establish the defense as he would have outside of bankruptcy. *See Raleigh,* 540 U.S. at 19.

> ...(6) *an agreement which is not to be performed within one year from the date of making the agreement...*

TEX. BUS. & COM. CODE ANN. § 26.01 (VERNON 2002) (emphasis added). If an oral contract can be performed within one year under its terms, it is not within the statute of frauds. *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 775 (Tex. 1974). If this contract falls within the statute of frauds, it is unenforceable. *Mercer v. C.A. Roberts Co.*, 570 F.2d 1232 (Tex. 1978).

The problem here is that it is unclear whether the contract could be performed in one year because, according to the testimony of both parties, the contract did not provide a time of performance for its obligations. Without more, the time of performance under this contract could be considered indefinite. *Cunningham and Dental Leasing v. Healthco, Inc.*, 824 F.2d 1448 (5th Cir. 1987), *citing Hardin Assoc., Inc. v. Brummett*, 613 S.W.2d 4, 7 (Tex. Civ. App.–Texarkana 1980, no writ). The law provides a solution for this problem. Courts may supply a reasonable time to complete performance of an oral contract that has not specified a time of performance. *Mercer v. C.A. Roberts Co.*, 570 F.2d 1232, 1236 (Tex. 1978); *Adams v. Big Three Industries, Inc.* 549 S.W.2d 411, 415 (Tex. App.–Beaumont 1977, writ ref'd n.r.e.). Courts determine a reasonable time by examining the nature and purpose of the agreement, the surrounding circumstances, the situation of parties and the subject matter of the agreement. *Leon Ltd. v. Albuquerque Commons Partnership* 862 S.W.2d 693, 701 (Tex. App.–El Paso 1993, no writ.). A determination of what is a reasonable time is a question of fact. *Mercer*, 570 F.2d at 1236; *Adams,* 549 S.W.2d at 415.

There is evidence in this record that enables the court to supply this term of the contract. Lamb testified that the oral agreement was like his standard written contracts. (Plaintiff's Exhibit #1). He explained

that this deal was no different from his normal written contracts except that it was not written. Thus, his written contracts are probative of the time-of-performance determination. Lamb testified that in his standard contracts, his work includes a schematic-design phase, a design-development phase, a construction-document phase, a bidding-and-negotiation phase, and a construction phase.[4] Lamb then broke down the normal time each phase would take were he to work on each phase continuously. He stated that the schematic-design phase and design-document phase would take five to six months to complete, the construction-document phase would take two to three months to complete and the bidding-and-negotiation phase would take a few weeks to complete. It is thus safe to say that the design-and-development phase of Lamb's contracts – including this oral contract – would be expected to take eight to ten months.[5] If this were the end of the analysis, there would be no question that the performance term would fall inside the one-year limit and outside the statute of frauds. However, there is the problem of the construction phase of the contract. The parties disagreed over whether the construction phase was an essential portion of the contract such that it should be counted as well.

The court concludes that the construction phase was an essential portion of the contract whose performance must be considered for statute of frauds purposes. The construction phase of the contract involves the architect visiting the construction site to oversee the construction of the building. Lamb testified that this would occur only once or twice a week and was separate from his duties in the design phase of the

---

[4] Lamb's standard written contract in Plaintiff's Exhibit #1 also reflects these phases.

[5] The design-and-development phase includes the schematic-design phase, the design-document phase, the construction-document phase and the bidding-and-negotiation phase. The only phase of the work that is excluded is the construction phase.

contract. However, Lamb treats the construction phase in his written contract as part of one contract, not as a separate contract. (Plaintiff's Exhibit #1).[6] Lamb breaks down the cost for each phase, but all the phases are totaled up and the overall price is included in the standard contract that must be signed. Lamb even admitted that the construction phase is part of the work under the contract and would have been completed in this type of contract. The court construes the oral contract to include the construction phase when considering whether it is possible to complete the work associated with this contract within one year. In order for the contract to fall outside the statute of frauds and be enforceable, the construction of the building must not take longer than four months.[7]

The circumstances, substance of the work and situation of the parties shows that a reasonable time to complete the construction of this project would take no less than four months. Lamb knew that the debtor did not have the money or financial backing to develop this project when he received this assignment. Eaton told Lamb that he had to get a developer to finance him or buy the property in order to build this building. There was also never any clear evidence that it was possible to build a condominium such as this in just four months. That schedule could be met only if this project were "fast-tracked" – an impossibility, considering the uncertainty of financing. Based on the foregoing evidence, the court concludes that neither

---

[6] Lamb does not present any evidence that shows how this oral contract would be any different than the standard written contract. Had he shown that this situation was unique in some way, then the court would have not considered the standard contract.

[7] This is assuming it takes eight months to complete the design-and-development portion of the contract. The construction of the condominium would have to be accomplished during the four months after the design phase to fall within the one-year limit. It is not necessary to consider the two months because if the condominium cannot be completed in four months, then it certainly cannot be completed in two. This approach requires the court to assume that the design-and-development phase take no more than eight months. If that phase took ten months, then the construction phase would have to be shortened to two months to withstand the statute of frauds.

party contemplated that this contract could be performed in anything less than a year. Under even the most optimistic conditions, the construction of the condominium would take more than four months to complete. Even though we cannot say how long it would take to perform this oral contract, the court can safely say it would take more than a year. Because the contract falls outside the one-year time limit, the statute of frauds applies, making the contract unenforceable.

### Was Lamb entitled to recover under Quantum Meruit?

Lamb contends, as an alternative basis for recovery, that he is entitled to be paid for his services in quantum meruit.[8] The debtor disputes this claim, arguing that Lamb never offered evidence of acceptance, use and enjoyment by the debtor of the work of Lamb.

The statute of frauds is no bar to an action for quantum meruit. *Campbell v. Northwestern Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978); *Prowse v. Schellhase*, 838 S.W.2d 787, 790 (Tex. App.–Corpus Christi 1992, no pet.). A quantum meruit recovery remedy is based upon a promise implied in law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Truly v. Austin,* 744 S.W.2d 934, 936 (Tex. 1988). A claimant asserting a quantum meruit claim based on a contract implied in law must establish that:

    1. Valuable services were rendered or materials were furnished;
    2. The services were rendered for the recipient sought to be charged;
    3. The services and materials were accepted by the person sought to be charged, used and enjoyed by him; and

---

[8] The debtor produced the testimony by Eaton to the effect that the architectural work was never used because the building was never built. The debtor uses this evidence to rebut the validity of the claim. In that case, whichever party that has the burden of proof outside of bankruptcy of proving the claim has the burden in bankruptcy. *See Raleigh*, 540 U.S. 15; *Promedco*, 275 B.R. at 503. With respect to contest of a claim for quantum meruit, the burden of proof will fall on the party stating the claim, or in this case, Lamb.

    4. The services and materials were accepted under such circumstances as reasonably notified the defendant/recipient that the plaintiff, in performing the services, expected to be paid by the recipient.

*Vortt Exploration*, 787 S.W.2d at 944; *Barnett v. Coppell North Texas Court, Ltd.*, 123 S.W.3d 804, 817 (Tex. App.–Dallas 2003, pet. denied). The debtor disputes only the third element, contending that Lamb never offered any evidence of acceptance, use and enjoyment of his architectural work by the debtor.

    The court finds that Lamb did supply the debtor with valuable services that were accepted, used and enjoyed by the debtor. Acceptance of services may consist of work performed for the recipient with the recipient's knowledge and consent. *Smith v. Pulliam, Inc.*, 394 S.W.2d 791 (Tex. 1965). Eaton testified that he knew Lamb was working on drawings and never told him to stop. Eaton also used Lamb's architectural work to entice developers into signing on to finance the construction. Eaton also testified that developers who did not like Lamb's work went away, while the ones who liked his work expressed interest in the overall project. The debtor benefitted by using Lamb's work to entice these developers into funding his project.

    Case law supports this finding of quantum meruit. Even though the work was never used to construct a building, an architect can recover on a quantum meruit claim for the reasonable value of services that were approved and accepted even though the proposed structure was never erected. *Waller County v. Freelove*, 210 S.W.2d 602, 605 (Civ. App.–Galveston 1948, writ ref. n.r.e.); *Beller v. Garcia De Lara*, 565 S.W.2d 319, 322 (Civ. App.–San Antonio 1978, no writ). The debtor's evidence is sufficient as a matter of law to rebut the debtor's claim. *See supra* note 8.

The measure of recovery in a quantum meruit action is the reasonable value of services rendered and materials furnished. *Thomason v. Freberg*, 588 S.W.2d 821, 830 (Civ. App.–Corpus Christi 1979, no writ). In determining what is reasonable under the circumstances, the end accomplished, as well as the time and effort expended, should be taken into consideration. *Colbert v. Dallas Joint Stock Land Bank*, 150 S.W.2d 771, 776 (Tex. 1941). The test for the value of services under quantum meruit is not the value of the services to the defendant, but what would be the usual, reasonable and customary compensation for such services. *Beller*, 565 S.W.2d at 322. Lamb and his expert witness on architectural fees both testified that the charges of $266,875.00 were reasonable. Lamb established that his expert witness was an expert on what is reasonable to charge for architectural services. Lamb also testified that he worked 3,000 hours on this project and produced volumes of work product in the court done for this project. Based on this testimony and the amount of time and effort expended, $266,875.00 is the reasonable value of Lamb's services. The debtor contends that Lamb's work is worth $40,000. However, this number does not appear anywhere in the evidence or in the hearing and seems to have been pulled from thin air. Therefore, the court will ignore it.

The court allows the claim of Thomas Lamb in the amount of $266,875.00. Lamb is directed to submit form of order consistent with this opinion.

### 